IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE,<br><br>       Plaintiff<br><br>       v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>       Defendants. | Civil Action No. 3:21-cv-0022<br><br>Magistrate Judge Patricia L. Dodge |

**MEMORANDUM OPINION**[1]

Plaintiff John Doe ("Doe") is a federal inmate housed at the Federal Correctional Institution at Loretto ("FCI Loretto") at all relevant times. (ECF No. 4.) Doe has brought this civil rights action related to his medical treatment at FCI Loretto against Defendants United States of America, FCI Loretto, Warden Moser, HSA Norman Weidlich, Dr. Kim Swindell ("Dr. Swindell"), and P.A. Burk ("P.A. Burk") (collectively, "Defendants").

Pending before the Court is the Motion for Partial Summary Judgment (ECF No. 62) of Dr. Swindell and P.A. Burk. For the reasons below, the motion will be granted in part and denied in part.

**I.     Relevant Procedural Background**

Doe, who originally proceeded pro se, initiated this action without paying the filing fee or submitting a motion to proceed in forma pauperis. (ECF No. 1.) His Complaint was docketed in April 2021, after his motion was filed and granted. (ECF No. 4.) Doe subsequently retained counsel. (ECF No. 10.)

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

Doe alleges that Defendants denied him reasonable health care, failed to treat him, breached duties owed to him, were negligent and deliberately indifferent to his medical needs, and failed to meet a reasonable standard of care. As a result of these violations, Doe alleges, he sustained irreversible nerve damage, suffers from various conditions, and sustained irreparable harm.

Defendants then moved to dismiss Doe's Eighth and Fourteenth Amendment claims as well as his Federal Tort Claims Act ("FTCA") claims against FCI Loretto, Warden Moser, HSA Norman Weidlich, Dr. Swindell and P.A. Burk. (ECF No. 29.) In a Memorandum Opinion issued on April 25, 2022, the Court granted this motion in part, dismissing with prejudice the following: all claims against the individual defendants in their official capacities; any *Bivens* claims against the United States of America; all claims arising under the Fourteenth Amendment; the FTCA claims related to all defendants other than the United States; and all claims against FCI Loretto, Warden Moser, and HSA Weidlich. (ECF No. 38.) The motion was otherwise denied.

After the close of discovery, Dr. Swindell and P.A. Burk filed a motion for partial summary judgment, along with a supporting Brief, Concise Statement of Material Facts and Exhibits (ECF Nos. 62-66). In turn, Plaintiff filed a Brief in Opposition and a Reply to Defendants' Concise Statement of Facts (ECF No. 67, 68). Dr. Swindell and P.A. Burk then filed a Reply (ECF No. 69) as well as Objections (ECF No. 70) to some of Plaintiff's responses to the Concise Statement. Thus, the motion has been fully briefed and is ready for disposition.

II.     **Relevant Factual Background**[2]

At all times relevant hereto, Doe was incarcerated at FCI Loretto. (ECF No. 4.) Dr. Swindell is the Clinical Director for FCI Loretto and his responsibilities include overseeing the clinical care of inmates at Loretto. (ECF No. 65-1 ¶ 1.) In this capacity, he consults with mid-level providers, including physician assistants, about the care provided to inmates. (*Id.* ¶ 2.) He had supervisory authority over P.A. Burk, who is a physician assistant. (*Id.*) Both Dr. Swindell and P.A. Burk provided medical care to Doe. (*Id.* ¶ 4.)

Doe has a history of lower back issues that stem from a 2002 motor vehicle accident. (ECF No. 65-1 ¶ 5.) In late April 2018, he was evaluated following a suspected altercation and stated that he was experiencing back pain after performing yoga and having an inmate "crack his back." (*Id.*) Subsequently, on May 10, 2018, Doe reported that he could not move, was taken to the medical department in a wheelchair, reported back pain on a scale of eight out of ten to ten out of ten, was given a shot for his back pain and was sent back to his unit without any further testing. (ECF Nos. 64 and 68 ¶ 10.) Three days later, he was administered another injection for his back

---

[2] The facts set forth here are undisputed unless otherwise noted. Defendants objected to Doe's Response to Paragraphs 10, 17, 19, 21, 24, 25 and 44 of Defendants' Concise Statement of Material Facts on the ground that Doe's responses misstate the contents of Plaintiff's medical records. While Defendants' objections about the records are noted, the Court's analysis is based on its independent review of Doe's medical records. Defendants also objected to Plaintiff's Responses to Paragraphs 8, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45, 46, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67 and 68 of Defendants' Concise Statement of Material Facts, in which Doe admits those facts but claims that they are not material to Defendants' liability. Defendants assert that Doe's responses are objectionable based on the relevant period of Doe's Eighth Amendment claims against Dr. Swindell and P.A. Burk. As noted in this opinion, the relevant time frame for the Eighth Amendment claims against Dr. Swindell and P.A. Burk (rather than the damages claimed as a result of these claims) is the period between May 10, 2018, and June 25, 2018.

pain and instructed to return to the medical department the following morning for further evaluation. (*Id.* ¶ 11.) On May 14, 2018, Defendant P.A. Burk performed a follow-up evaluation. During this evaluation, Doe reported back pain on a scale of ten out of ten, with shooting pain in the right lower back radiating to his upper leg, which was exacerbated with movement. (*Id.* ¶ 12.) Burk prescribed Amitriptyline, ordered a lumbar spine x-ray, and encouraged Doe to engage in mild stretching exercises. (*Id.*) Several days later, the lumbar spine x-ray report was received and was noted as unremarkable. (*Id.* ¶ 13.) The x-ray report also stated that Doe's bone mineralization was normal, the disc spacing was preserved, there was no facet arthropathy, and the lumbar vertebral bodies showed normal height and alignment. (*Id.*)

On May 21, 2018, Dr. Swindell enrolled Doe into a chronic care clinic, specifically, the orthopedic rheumatology clinic, and prescribed 800 grams of Ibuprofen to be taken for 180 days. (ECF Nos. 64 and 68 ¶ 14.) Chronic care clinics are a means for a health care provider to track inmates with ongoing medical needs at clinically appropriate intervals. (*Id.* ¶ 15.) By policy, they should occur every twelve months, but can occur more often in more complex cases. (*Id.*)

On May 22, 2018, Doe was evaluated by Dr. Swindell at the chronic care clinic. During this assessment, Doe complained of lower back pain at a level of six (out of ten) with radiation to the right buttocks. (ECF Nos. 64 and 68 ¶ 16.) Doe also reported tingling in his right toes. (*Id.*) He was prescribed Acetaminophen and directed to engage in stretching exercises and follow-up in four weeks if symptoms did not resolve. (*Id.*) No additional diagnostic testing was performed that day nor was Doe referred to a specialist for further evaluation. (*Id.*)

Doe was evaluated again on May 23, 2018. He denied any medical complaints and was placed in the Special Housing Unit ("SHU") for smoking tobacco. (ECF Nos. 64 and 68 ¶ 17.) On June 1, 2018, his medications were refilled. (ECF No. 65-1 ¶ 6.) On June 18, 2018, P.A. Burk

conducted another evaluation of Doe.  Doe reported improved symptomatology but said that he was experiencing lower back tightness and pain, with limited forward bending movement, which he attributed to being unable to exercise while confined in the SHU.  (*Id.* ¶ 19.)

One week later, on June 25, 2023, P.A. Burk saw Doe again, who reported that for the past three days, he had "difficulty retaining stool" and had a "feeling of numbness in his genitals."  (*Id.* ¶ 20.)  P.A. Burk conducted a rectal exam of Doe, which revealed new neurological findings consistent with cauda equina syndrome.  (*Id.*)  Doe was immediately transported to the University of Pittsburgh Medical Center in Altoona, Pennsylvania for further evaluation.  (*Id.*)  There, Doe was diagnosed with cauda equina syndrome and underwent lumbar laminectomy surgery ("L5-S1 surgery") without incident.  (*Id.* ¶¶ 20-22.)  Doe was discharged from the hospital on June 28, 2018, with activity restrictions, was prescribed analgesics and was recommended for neurological follow-up.  (*Id.*); *see also* ECF No. 65-1 ¶16.

Both Plaintiff and Defendants submitted declarations in support of their positions. Defendants submitted the Declaration of Dr. Swindell, which sets forth in detail the medical care he provided Doe and verifies that the docketed medical records (ECF No. 65-2) are those related to his care of Doe for the relevant time period.  (ECF No. 65-1.)

Doe submitted Declarations from Paul E. Shields, D.O. and W. Paul Diefenbach, M.D. (ECF No. 68-1.)  Dr. Shields opines that the medical care provided to Doe deviated from a reasonable standard of care by not requiring MRI testing or referring Doe to a specialist on May 10, 2018, to diagnose the source of his symptoms and determine whether surgical intervention was necessary.  (*Id.* pp. 108, 115).  Dr. Diefenbach renders the opinion that the medical care provided by Defendants fell below the standard of care by not requiring "further diagnostic studies, such as an MRI scan of the lumbar region" and "a referral to a spine specialist to consider more intensive

therapeutic intervention." (*Id.* p. 56.) He also stated if these studies and a referral had been performed either on May 10, 2018, or even as late as June 18, 2018, Doe would have received treatment that would have prevented the development of cauda equina syndrome. (*Id.*)

### III.    Legal Standard

A court must grant summary judgment if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying evidence which shows the lack of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Id.* (internal citation omitted). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *Doe v. Cty. of Ctr., Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

### IV.    Discussion

Defendants Swindell and Burk argue that they are entitled to summary judgment with respect to Doe's Eighth Amendment claim because the uncontroverted record shows that Doe received progressive and comprehensive healthcare from qualified healthcare professionals. By contrast, Doe asserts that the Court decided this issue in its Memorandum Opinion and Order dated April 25, 2022 (ECF Nos. 37 and 38) which denied Defendants' motion to dismiss, thereby

establishing "the law of the case." He also argues that there are genuine issues of material fact on the issue of Defendants' deliberate indifference.

Defendants also argue they are entitled to qualified immunity. Doe disputes this, contending that there are genuine issues of material fact about the violation of his Eighth Amendment rights that preclude summary judgment, and he has a clearly established right to adequate medical care. (*Id.* pp. 24-25.) These arguments will be addressed below.

### A. Doe's "Law of the Case" Argument

Citing the law-of-the-case doctrine, Doe asserts that the Court's denial of Defendants' motion to dismiss regarding Plaintiff's Eighth Amendment claim precludes Defendants from revisiting the issues addressed therein in connection with their motion for summary judgment.

In its analysis of Defendants' motion to dismiss, the Court noted that the only issue was whether Doe had "alleged sufficient facts to support an inference that Defendants were deliberately indifferent." (ECF No. 37, p. 8.) The opinion concludes that "for purposes of a motion to dismiss, [the Complaint's factual allegations] sufficiently satisfy the second element of his Eighth Amendment claim that Defendants acted with deliberate indifference." (ECF No. 37, pp. 9-10.) Thus, Doe argues, Defendants' motion must be denied because the Court has already found that Doe's allegations sufficiently pleaded the element of deliberate indifference.

Defendants dispute Doe's contention that the law of the case precludes any further analysis of deliberate indifference. They note that the legal standard applicable to a motion to dismiss is markedly different than that applied in the context of a motion for summary judgment. In deciding the motion to dismiss, they assert, the Court analyzed whether Doe adequately pleaded facts to support an Eighth Amendment claim. By contrast, Defendants' motion for summary judgment, and Doe's opposition, includes a review of the complete factual record. Thus, in resolving the

current motion, the Court must determine whether there are any genuine issues of material fact that would preclude judgment in favor of the moving party.

"The law of the case doctrine developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *The Council of Alternative Pol. Parties, et al. v. Hooks,* 179 F.3d 64, 69 (3d Cir. 1999) (*quoting* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal* Practice, *and Procedure:* Jurisdiction 3d §4478 at 788 (1981)).  Moreover, "while the law of the case doctrine bars courts from reconsidering matters actually decided, it does not prohibit courts from revisiting matters that are 'avowedly preliminary or tentative.'" *Id.*

Applying this standard, Doe's law of the case argument lacks merit.  As the Court expressly stated in its previous opinion, "in deciding a Rule 12(b)(6) motion, the court must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" (Citations omitted.)  Thus, as long as Doe pleaded facts in the Complaint that, accepted as true, supported his Eighth Amendment claim, Defendants' motion to dismiss was properly denied. Indeed, as stated in the opinion, "*for purposes of a motion to dismiss,* [Doe's] allegations sufficiently satisfy the second element of his Eighth Amendment claim that Defendants acted with deliberate indifference." By contrast, Defendants contend in their motion for summary judgment that the full factual record cannot and does not support a claim of deliberate indifference.  In so arguing, they rely in part on Doe's medical records, Dr. Swindell's Declaration, and his deposition testimony, none of which were part of the record at the motion-to-dismiss stage.  Thus, it is necessary to fully review and analyze all of the record evidence, not just the allegations of the Complaint, in order to evaluate Doe's claim and Defendants' motion for summary judgment.

Simply put, the Court's denial of Defendants' motion to dismiss on the ground that Doe had sufficiently pleaded facts to support a claim of deliberate indifference does not preclude an examination of those facts and the entire evidentiary record in order to determine whether Defendants are entitled to summary judgment with respect to Doe's Eighth Amendment claim. Thus, Doe's law of the case argument is unavailing.[3]

### B. Eighth Amendment Claim

"A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply." *Bone v. Ebbert*, Civ. A. No. 3:19-0112, 2022 WL 943036, at *8 (M.D. Pa. Mar. 29, 2022). This is especially true for claims of deliberate indifference predicated on the Eighth Amendment. *Id.* at *10 (citing *Carlson v. Green*, 446 U.S. 14 (1980)).

The Eighth Amendment prevents prison officials from acting with deliberate indifference to prisoners' serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "In order to establish a violation of [a prisoner's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999)). Thus, to state an Eighth Amendment claim, facts must exist showing that "objectively [Doe] suffered a sufficiently serious deprivation" and "subjectively [Defendants] had a culpable state of mind in allowing the

---

[3] As Defendants argue, Doe's reliance on the standard for reconsideration set forth in Rule 59(e) is misplaced. Defendants are not seeking reconsideration of the Court's denial of their motion to dismiss. Rather, they are relying on the full factual record rather than the allegations pleaded in the Complaint, as support for their motion.

deprivation to occur." *Thompson v. Pa. Dep't of Corrs.*, Civ. A. No. 1:19-cv-274, 2020 WL 2429011, at *3 (W.D. Pa. Apr. 16, 2020) (quoting *Wilson v. Seiter*, 501 U.S. 294 (1991)).

As explained by the Third Circuit as it relates to the issue of a serious medical need:

> the concept of a serious medical need, as developed in *Estelle*, has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The [prisoner's] condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."

*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). The seriousness of an inmate's medical need "may…be determined by reference to the effect of denying the particular treatment." *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347. In addition, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." (*Id.*)

It is uncontroverted that Doe had a serious medical need on June 25, 2018, when he was taken to an emergency room, diagnosed with cauda equina syndrome and underwent surgery. Where the parties disagree is when Doe's serious medical need arose. According to Defendants, Doe did not have a serious medical need before P.A. Burk's findings on June 25, 2018, which reflected a significant change in his condition. On the other hand, Doe contends that the symptoms and pain that he reported on May 10, 2018, and thereafter reflected a serious medical need that went untreated.

The parties also disagree about whether the treatment that was rendered, or not rendered, by Dr. Swindell and P.A. Burk beginning on May 10, 2018 reflects a culpable state of mind that represents deliberate indifference. The Third Circuit has found deliberate indifference to exist in

10

various scenarios, including where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; (3) prevents a prisoner from receiving needed or recommended medical treatment; or (4) persists in a particular course of treatment in the face of resultant pain and risk of permanent injury. (*Id.*)

Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (additional citation omitted). At the same time, the fact that prison medical personnel have provided some medical care to an inmate does not preclude a finding of deliberate indifference. In fact, as noted by the Third Circuit:

> [t]here are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for "an easier and less efficacious treatment" of the inmate's condition. *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)). Nor may "prison authorities deny reasonable requests for medical treatment . . . [when] such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" *Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)). And "knowledge of the need for medical care [may not be accompanied by the] . . . intentional refusal to provide that care." *Id.* (alterations in original) (quoting *Ancata v. Prison Health Servs.*, 769 F.2d 700, 204 (11th Cir. 1985)).

*Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) (alterations in original).

The crux of the issue is whether Defendants Swindell and Burk were deliberately indifferent to Doe's medical needs between May 10, 2018, when he was given a shot for his back pain, and June 25, 2018, when Doe reported to Defendant Burk that he had "difficulty retaining stool" for the past three days and that over the same period, he also had a "feeling of numbness in his genitals." After Doe reported these symptoms, P.A. Burk conducted a rectal exam which revealed new neurological findings consistent with cauda equina syndrome, which resulted in

11

Doe's immediate transfer to UPMC Medical Center in Altoona, Pennsylvania, where he was diagnosed with cauda equina syndrome and underwent surgery.

Defendants Dr. Swindell and P.A. Burk contend that they are entitled to judgment in their favor because the full record conclusively shows that both rendered comprehensive medical care to Doe during the relevant period.  They claim that the evidence shows that Doe received extensive treatment, which included evaluations, medication, diagnostic testing and ultimately, referral to an outside hospital for further treatment.  Further, they argue, the gravamen of Doe's claim relates to the adequacy of this care.  Thus, at most, Doe has a claim for medical malpractice, not the violation of his civil rights.  Moreover, they also assert that there is no evidence in the record that demonstrates deliberate indifference on the part of either defendant.

In opposing Defendant's motion, Doe has produced, among other evidence, the Declarations of Drs. Shields and Diefenbach, both of whom opine that as early as May 10, 2018, Dr. Swindell and P.A. Burk should have ordered further diagnostic studies and referred him to a spine specialist rather than simply give him an injection for his back pain.  And Doe claims that their failure to do so reflects sufficient evidence of Defendants' deliberate indifference to defeat their motion for summary judgment.

Based upon this background, both of the requisite elements of an Eighth Amendment claim will be analyzed with respect to the claims against Dr. Swindell and P.A. Burk.

   1. Serious Medical Need

Construing the facts in the light most favorable to Doe and drawing all reasonable inferences and resolving all doubts in his favor, there is a material issue of fact about when a serious medical need arose.  A reasonable jury could find that, as Doe's experts concluded, Doe had a serious medical need as early as May 10, 2018 that was inadequately treated until June 25,

2018. By contrast, Defendants have presented conflicting evidence to support their position that a serious medical need did not arise until June 25, 2018.

Given the factual dispute about when a serious medical need arose, it remains a genuine issue of material fact that cannot be resolved on a motion for summary judgment.

2. <u>Deliberate Indifference</u>

a. Claim Against Dr. Swindell

Defendants argue that the undisputed facts show that Dr. Swindell was not deliberately indifferent to Doe's medical needs. They note that eight days after Doe was seen by P.A. Burk on May 10, 2018, Dr. Swindell enrolled Doe in a chronic care clinic, specifically, an orthopedic rheumatology clinic. Dr. Swindell evaluated Doe several days later, at which time Doe reported lower back pain and tingling in his right toes. Dr. Swindell prescribed acetaminophen and directed Doe to engage in stretching exercises and to follow up in four weeks if his symptoms did not resolve. Doe's medications were refilled on June 1, 2018, and according to Doe's medical records, on June 18, 2018, Doe reported improved symptoms and attributed the inability to exercise while housed in the SHU as the reason for experiencing lower back tightness. (ECF No. 65-1 ¶ 6.) As the record reflects, on June 25, 2018, Doe's evaluation by P.A. Burk revealed neurological findings indicative of cauda equina syndrome.

Doe argues that Dr. Swindell violated his Eighth Amendment rights by rendering medical care that reflected a deliberate indifference to his medical needs. He claims that once he presented with the reported symptoms on May 10, 2018, further diagnostic studies and a referral to a specialist should have been ordered. And, Doe asserts, Dr. Swindell's deposition testimony reveals evidence that, at a minimum, creates genuine issues of material fact about the issue of deliberate indifference. For example, Dr. Swindell testified that during the May 22, 2018, chronic care clinic

evaluation, he considered whether Doe may be suffering from cauda equina syndrome but ruled it out; concluded that an MRI was not needed "emergently"; and did not rule out whether imaging should be scheduled on a non-emergency basis. (ECF No. 65-3 pp. 37-47.)

Based upon a review of all of the evidence, the Court concludes that Dr. Swindell is entitled to judgment in his favor with respect to Doe's Eighth Amendment claim against him. As reflected in the Declarations of Dr. Shields and Dr. Diefenbach, Doe is actually challenging the *adequacy* of the care rendered by Dr. Swindell as well as his medical judgment that certain tests and referrals were not necessary. Drs. Shields and Diefenbach opine that these decisions fell below the standard of care, but as the Supreme Court has made clear, allegations of medical malpractice are insufficient to show a constitutional violation. *Estelle,* 429 U.S. at 106. Thus, the Declarations of Drs. Shields and Diefenbach show that, at most, the care provided fell below the standard of care.

As noted by the Third Circuit, "mere receipt of inadequate medical care does not itself amount to deliberate indifference – the defendant must also act with the requisite state of mind when providing the inadequate care." *Pearson*, 850 F.3d at 535. Even viewing the evidence in the light most favorable to Doe that he had a serious medical need as early as May 10, 2018, there is no evidence that Dr. Swindell acted with a culpable state of mind regarding the nature of the treatment rendered. Indeed, there is no record evidence that reflects or even creates an inference that Dr. Swindell possessed the requisite state of mind with respect to his actions or failure to act in response to Doe's medical needs. Neither the medical records nor Dr. Swindell's deposition testimony supports a conclusion that he intentionally refused to treat Doe's medical needs, delayed Doe's necessary medical treatment for a non-medical reason, prevented Doe from receiving needed or recommended medical treatment or persisted in a particular course of treatment in the face of resultant pain and risk of permanent injury. *See Monmouth Cty. Corr. Inst. Inmates,* 834

F.2d at 346, 347. Indeed, a fact finder might conclude that the very conduct cited by Doe in support of his claim of deliberate indifference, that is, that Dr. Swindell considered but ruled out cauda equina syndrome, concluded that there was no need to conduct an MRI on expedited basis and failed to rule out the possibility of imaging, fell below the standard of care. However, there is no evidence that such conduct reflects or even subjectively suggests a culpable state of mind. While Doe has presented sufficient evidence that Dr. Swindell's treatment may have been negligent, the record includes no evidence that he knowingly and intentionally chose an easier and less effective treatment for Doe, denied requests for medical treatment, deliberately delayed Doe's treatment or knew of the need for further care but intentionally refused to provide it. Rather, the evidence conclusively shows that Dr. Swindell exercised his medical judgment in the care provided. Even assuming his judgment was flawed and mistakes were made, such conduct does not support the element of deliberate indifference. Without some evidence of a culpable state of mind, Doe's Eighth Amendment claim against Dr. Swindell fails as a matter of law.

For these reasons, Defendants' motion for partial summary judgment with respect to Doe's Eighth Amendment claim against Dr. Swindell will be granted.[4]

### b. Claim Against P.A. Burk

Doe contends that sufficient evidence of P.A. Burk's violation of his Eighth Amendment rights is reflected in the medical records and in P.A. Burk's deposition testimony. Doe notes that he reported back pain on a scale from eight out of ten to ten out of ten to P.A. Burk. However, on the four occasions P.A. Burk examined Doe between May 10, 2018, and June 18, 2018, other than ordering one x-ray of Doe's lumbar spine (which turned out to be unremarkable), P.A. Burk's care

---

[4] Because Dr. Swindell's motion is being granted on this basis, the Court need not reach Defendants' alternative argument of qualified immunity.

consisted of provided pain injections, recommending "mild" stretching exercises and prescribing various pain medications. According to Doe, P.A. Burk should have instead recommended that Doe be sent to a spine specialist or have additional imaging. (ECF No. 67 p. 15.)

While Doe takes issue with the adequacy of the care that he was provided by P.A. Burk, this would not provide an adequate factual foundation for a finding of deliberate indifference for the same reasons discussed in connection with the claim against Dr. Swindell.

At the same time, however, Doe also cites to P.A. Burk's deposition testimony as evidence of deliberate indifference. P.A. Burk testified that had he been treating a patient with the symptoms Doe reported on May 14, 2018 (back pain on a scale of ten out of ten and shooting pain in the right lower back radiating to his upper leg) at an outside clinic, he "possibly" may have ordered an MRI because at an outside clinic, he would have been free to refer a patient for an MRI without having to justify it to the security staff at a prison facility. (ECF No. 65-6 pp. 65-67.) A reasonable inference to be drawn from this testimony is that P.A. Burk delayed ordering an MRI for Doe for a "non-medical reason," or because an "easier and less efficacious treatment" of Doe's condition existed. A jury could conclude that unlike what P.A. Burk may have done if Doe was seen at an outside clinic, he failed to order an MRI simply to avoid the issue of justifying an MRI order to the prison's security staff. Based on the holdings of *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 346, 347 and *West* 571 F.2d at 162, this testimony creates a genuine issue of material fact about whether a non-medical reason drove P.A. Burk's decision not to order an MRI on May 14, 2018, such that a reasonable jury could find that he was deliberately indifferent.[5]

---

[5] The Court takes no position on whether if an MRI had been ordered, it would have resulted in an earlier diagnosis, a different result or different treatment.

P.A. Burk also asserts that he is entitled to qualified immunity with respect to Doe's claim against him.  Qualified immunity shields federal and state officials from money damages unless a plaintiff [shows] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Because there are material issues of fact related to whether P.A. Burk violated Doe's Eighth Amendment rights, the first prong of this defense is not satisfied.  Moreover, the right to adequate medical care was clearly established at the time of the alleged conduct.  *Estelle,* 429 U.S at 103-105 (it is "the government's obligation to provide medical care for those whom it is punishing by incarceration.").

For these reasons, Defendants' Motion for Partial Summary Judgment with respect to the Eighth Amendment claim against P.A. Burk will be denied.

**V.**     **Conclusion**

For the reasons discussed in this memorandum opinion, Defendants' Motion for Partial Summary Judgment will be granted with respect to Dr. Swindell and denied with respect to P.A. Burk.

An appropriate order will follow.

Dated: December 19, 2023                              BY THE COURT:

/s/Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge